1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSUMER LITIGATION ASSOCIATES, P.C.**
Craig C. Marchiando (SBN 283829)
Matthew J. Erausquin (SBN 255217)
700 South Flower Street
Suite 1000
Los Angeles, CA 90017
Tel: 703-273-7770
Fax: 888-892-3512
craig@clalegal.com
matt@clalegal.com

Leonard A. Bennett (*Pro Hac Vice to be filed*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757-930-3660
Fax: 757-257-3450
lenbennett@clalegal.com

**BERGER MONTAGUE PC**
Russell D. Paul (*Pro Hac Vice* to be filed*)*
Abigail J. Gertner (*Pro Hac Vice* to be filed)
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
rpaul@bm.net
agertner@bm.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA PELAYO, MILES AND OLIVIA MCGRÉGOR, SANDRA MORGAN, CHRISTINA AND SETH MARTIN, and DOROTHY RICE, individually, and on behalf of a class of similarly situated individual,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR COMPANY, KIA MOTORS AMERICA, INC. and KIA | Case No.: 8:20-cv-1503<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violation of California's Legal Remedies Act<br>(2)  Breach of Express Warranty<br>(3)  Breach of Implied Warranty<br>(4)  Fraud by Omission/Fraudulent Concealment<br>(5)  Unjust Enrichment<br>(6)  Violation of the Song-Beverly Consumer Warranty Act<br>(7)  Violation of California's Unfair Competition Law<br>(8)  Violation of the Florida Deceptive Trade Practices Act |

| | |
|---|---|
| 1 | MOTORS CORPORATION |
| 2 |         Defendants. |

(9)   Breach of Warranty against Rehibitory Defects
(10)  Violation of the Louisiana Products Liability Act
(11)  Violation of the Missouri Merchandising Practices Act
(12)  Violation of the Virginia Consumer Protection Act

**DEMAND FOR JURY TRIAL**

1.     Plaintiffs Sara Pelayo, Miles and Olivia McGregor, Sandra Morgan, Christina and Seth Martin and Dorothy Rice, ("Plaintiffs") bring this action for themselves and on behalf of all persons ("Class Members") in the United States, and in the alternative on behalf of all persons in the states of Florida, Missouri, and Virginia, who purchased or leased Hyundai or Kia brand vehicles with a "Gamma" 1.6L GDI engine ("Class Vehicles")[1].

2.     Defendants Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC") (together with HMA, "Hyundai"), Kia Motors America, Inc. ("KMA"), and Kia Motors Corporation ("KMC") (together with KMA, "Kia," and Kia collectively with Hyundai, "Defendants") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiffs allege as follows:

## INTRODUCTION

3.     This is a consumer class action concerning the misrepresentation of material facts, the failure to disclose material facts, and safety concerns to consumers.

4.     Defendants manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' possessed a defect which materially affects the ability of the vehicles to provide safe, reliable transportation.  Instead, the Class Vehicles are prone to stalling and engine fires while in motion, as well as excessive oil consumption and premature engine failure prior to the expected lifetime of the vehicle.

5.     Plaintiffs are informed and believe, and based thereon allege, that the Class Vehicles contain design, manufacturing, material, and/or workmanship

---

[1] Upon information and belief, these vehicles include: 2010-present Hyundai Accent; 2018 to present Hyundai Kona; 2010-2020 Hyundai Elantra; 2012 to present Hyundai Veloster; certain 2009 to present Hyundai Tucson; 2012 to present Kia Rio; 2010 to present Kia Soul; and certain 2017 to present Kia Sportage.

defects which cause sudden stalling, excessive oil consumption, and premature engine failure as well as catastrophic and fast-moving fires while the vehicles are being driven which destroy the vehicles, their contents and can harm the passengers therein (the "Defect").  Upon information and belief, the Defect is the result of sub-standard, inconsistent and improper procedures in manufacturing the Gamma engines, and/or poor quality control procedures to ensure such engines do not reach consumers.  The Defect causes unsafe driving conditions because the Class Vehicles have a significantly greater chance of stalling, engine failure, or spontaneously bursting into flame while being driven.

6.     The Defect is inherent in each Class Vehicle and was present at the time of sale or lease to each Class Member.

7.     Gamma GDI engines were first introduced in Hyundai and Kia vehicles in 2006.  They have become the standard engine for the small to midsize range of vehicles in both manufacturers' lineups.

8.     HMC and KMC designed and manufactured the Class Vehicles, as well as the engine, related powertrain components, and the software which controls these systems within the vehicles.  HMA and KMA marketed and distributed the Class Vehicles in the United States, as well as interfaced with consumers, and distributed service instructions, training, and updates to dealers.

9.     All of the Gamma engines are fuel injection engines, which is when the gasoline is injected into the engine itself instead through a carburetor.  Most of the Gamma engines on the road currently are gasoline direct injection ("GDI"), which injects gasoline directly into the combustion chamber. Some newer models of Gamma engines have indirect injection, or multipoint fuel injection ("MPI"), which injects gasoline into the intake ports upstream of each cylinder's intake valve.

10.     Injection engines are exposed to more internal heat and pressure,

which requires more precise manufacturing and engine control software.  This is particularly true of GDI engines.  Such engines are also prone to building of carbon residue, excessive oil consumption, and flash burns in the cylinder.[2]  In Gamma GDI engines, prior to bursting into flames, vehicles may stall unexpectedly while being driven, making ticking noises, and burn through multiple sparkplugs.

11.     Upon information and belief, Defendants decided to use Gamma MPI engines in 2020 model year vehicles, in part because they are less susceptible to spontaneously bursting into flame because the engines are subject to significantly less pressure and more forgiving of manufacture defects.

12.     Despite knowledge of the Defect and its dangerous associated safety risk, Defendants failed to issue a comprehensive and effective recall, fix the vehicles, and continued to sell vehicles with the Defect.

13.     The Defect presents a safety risk for Plaintiffs, other owners and lessees of Class Vehicles, and the general public because, upon information and belief, when the vehicles suddenly decelerate or stop in the middle of the road, they subject themselves and other vehicles to a high risk of collision and personal injury, and when they burst into flames while being driven, they cause a direct threat to the lives of the passengers and surrounding vehicles and their passengers.

14.     In the United States, Defendants provide warranty coverage for Class Vehicles under one or more warranties.  Both provide a New Vehicle Basic Warranty, which covers vehicles under the 5 years or 60,000 miles and a Powertrain Limited Warranty for powertrain components for 10 years or 100,000

---

[2] Jones, Greg, "Solving Gasoline Direct Injection Issues: The facts and fictions of GDI," EngineBuilder, https://www.enginebuildermag.com/2017/10/solving-gasoline-direct-injection-issues-facts-fictions-gdi/ (Oct. 1, 2017).

CLASS ACTION COMPLAINT

1    miles.  HMA calls this "America's Best Warranty."[3]

2         15.    Based on pre-production testing and design failure mode analysis,

3    quality control audits, early complaints to dealers and warranty claims, dealer

4    audits, replacement part orders, Service Bulletins and complaints made to

5    Defendants HMA, KMA, and NHTSA, Defendants were aware of the Defect in

6    Class Vehicles but continued to misrepresent the ability of the Class Vehicles to

7    provide safe, reliable transportation, and further concealed the Defect and its

8    effects from Plaintiffs and other owners and/or lessees of Class Vehicles.

9         16.    Because the Defect was present at the time of sale or lease of the

10   Class Vehicles and concealed from Plaintiffs and other owners and/or lessees of

11   Class Vehicles, Defendants were required to repair the Class Vehicles under the

12   terms of the warranties free of charge.  Yet, on information and belief,

13   Defendants has failed to permanently repair or replace the defective parts free of

14   charge under the warranties because Defendants have failed to acknowledge the

15   scope and extent of the Defect.

16        17.    Instead, Defendants have engaged in piecemeal, half-measures in

17   attempting to remediate the Defect, in an attempt to reduce their costs of repair,

18   wrongfully transfer the remaining cost to Plaintiffs and members of the Class,

19   and to conceal the true nature, cause and extent of the Defect in Class Vehicles.

20        18.    Knowledge and information regarding the Defect and the associated

21   safety risk were in the exclusive and superior possession of Defendants and their

22   authorized dealers and were not provided to Plaintiffs and other owners and/or

23   lessees of the Class Vehicles, who could not reasonably discover the Defect

24   through due diligence.  Despite Defendants' knowledge, Defendants' continue to

25   sell these defective vehicles, has failed to disclose the existence of the Defect to

26   directly to consumers, Plaintiffs and other owners and/or lessees of Class

27   _____

28   [3] *See* https://www.hyundaiusa.com/us/en/assurance/america-best-warranty

Vehicles, has not issued a full, comprehensive and effective recall and has not remedied the Defect and/or compensated Class Vehicle purchasers, owners, or lessees for this material defect.

19.     The nature of the Defect is such that it manifests both within and outside the warranty periods, and excessive oil consumption, premature engine failure, stalling and fires can occur in brand-new vehicles as well as vehicles that have been on the road for years.  Because knowledge and information about the existence and scope of the Defect was within the exclusive and superior possession of Defendants and their authorized dealers, Defendants concealed this information in order to continue to sell more Class Vehicles and to wrongfully transfer costs of repair or replacement to Plaintiffs and other owners and/or lessees of Class Vehicles.

20.     No reasonable consumer expects to purchase or lease a vehicle that contains a Defect which creates a safety hazard that causes the vehicle to shutdown, stall or burst into flames while being driven.  The Defect is material to Plaintiffs and other owners and/or lessees of Class Vehicles because when they purchased or leased their Class Vehicles, they reasonably expected that they would be able to drive the vehicles without the engines failing, stalling or bursting into flame.  Had Defendants disclosed the Defect, Plaintiffs and other owners and/or lessees of Class Vehicles would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

**THE PARTIES**

**Plaintiff Sara Pelayo**

21.     Plaintiff Sara Pelayo is a California citizen who resides in Wildomar, California.

22.     In or around August 2016, Pelayo purchased a new 2016 Hyundai Accent from Temecula Hyundai, an authorized Hyundai dealer in Temecula.

23.   Plaintiff Pelayo purchased her Hyundai Accent vehicle primarily for personal, family, or household use.

24.   The safety and reliability of the vehicle were important factors in Pelayo's decision to purchase her vehicle. Before making her purchase, she reviewed the Hyundai brochure for the Accent as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. Pelayo believed that the Hyundai Accent would be a safe and reliable vehicle.

25.   Hyundai's misstatements and omissions were material to Pelayo. Had Hyundai disclosed its knowledge of the Defect before Pelayo purchased her Accent, Pelayo would have seen and been aware of the disclosures. Furthermore, had they known of the Defect, Pelayo would not have purchased her vehicle or would have paid less for it.

26.   Pelayo properly maintained her 2016 Hyundai Accent, in particular, making sure oil changes and routine service were timely.

27.   On or about July 24, 2020, Pelayo was driving her vehicle and attempting to enter a freeway when the engine suddenly stalled.  She called the American Automobile Association, which helped her to restart her car so she could get home.

28.   The next day, Pelayo attempted to drive her vehicle again. As she was driving, the vehicle began to stall once more and was also producing strange noises she had not heard before. She pulled the vehicle over and noticed white smoke coming from underneath the hood, which soon turned to black smoke. She and her passengers immediately exited the vehicle and, upon seeing flames beneath the vehicle, called 911.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15       29.   Both police and the fire department responded to the vehicle fire,

16   but the vehicle was destroyed by the blaze.

17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1

2      30.      There was no indication from the vehicle via warning lights or

3   sounds that there was a problem with the vehicle's engine prior to the stall or the

4   fire.

5      31.      Due to the extent of the damage caused by the fire and water, the

6   vehicle was classified as a total loss.

7

8

9

10

11  

12

13

14

15

16

17

18     32.      At all times, Plaintiff Pelayo, like all Class Members, has attempted

19  to drive her vehicle in a foreseeable manner and in the manner in which it was

20  intended to be used.

21  **Plaintiffs Miles and Olivia McGregor**

22     33.      Plaintiffs Miles and Olivia McGregor ("the McGregors") are Florida

23  citizens who reside in Naples, Florida.

24     34.      In or around August 2014, the McGregors purchased a new 2015

25  Kia Rio from Airport Kia, an authorized Kia dealer in Naples, Florida.

26     35.      The McGregors purchased their Kia Rio vehicle primarily for

27  personal, family, or household use.

28     36.      The safety and reliability of the vehicle were important factors in the

McGregor's decision to purchase their vehicle. After hearing a radio commercial about the vehicle, the McGregors went to Airport Kia.  Before making their purchase, they reviewed the Kia brochure for the Rio as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. The McGregors believed that the Kia Rio would be a safe and reliable vehicle.

37.     Kia's misstatements and omissions were material to the McGregors. Had Kia disclosed its knowledge of the Defect before the McGregors purchased their Rio, the McGregors would have seen and been aware of the disclosures. Furthermore, had they known of the Defect, the McGregors would not have purchased their vehicle or would have paid less for it.

38.     The McGregors properly maintained their 2015 Kia Rio, in particular, making sure oil changes and routine service were timely.

39.     On or about June 25, 2020, Plaintiff Olivia McGregor was driving on Interstate 75 southbound near mile marker 182.  Her two year-old son and she were returning home from a visit to her parents in Tennessee.  As a result, they had many of their possessions in the car, including her son's car seat, clothing, medication including her EpiPen, her son's tablet and scooter, as well as all of the toys and sensory items for her son who is on the autism spectrum.  The value of these items were hundreds of dollars.

40.     As she was driving, Plaintiff Olivia McGregor heard a "pop" from the direction of her engine.  Almost immediately thereafter, smoke began to pour from the hood of her 2015 Kia Rio.  She immediately pulled over and grabbed her son from the car.

41.     Within moments, flames engulfed the engine compartment and driver's area of the car.  She called for emergency help and both the police and the North Port Fire Department arrived within minutes.

42.     By the time emergency services arrived, the vehicle was "fully

CLASS ACTION COMPLAINT

1  involved" in the fire. The North Port Fire Department used 500 gallons of water
2  to extinguish the fire, causing further damage to the vehicle.  The photograph
3  below was posted by the North Beach Fire Department on its Instagram account
4  and is of the McGregor's vehicle engulfed in flames during the incident
5  described above.



CLASS ACTION COMPLAINT

43.    The North Port Fire Department Battalion Chief, John Waligora, stated in the incident report that the fire originated under the hood and moved its way back to the passenger compartment.  He also stated that the "[c]ause appeared to be mechanical in nature."

44.    There was no indication from the vehicle via warning lights or sounds that there was a problem with the vehicle's engine.

45.    Due to the extent of the damage caused by the fire and water, the vehicle was classified as a total loss.



CLASS ACTION COMPLAINT

46.     At all times, Plaintiffs Miles and Olivia McGregor, like all Class Members, have attempted to drive their vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Sandra Morgan**

47.     Plaintiff Sandra Morgan is a Louisiana citizen who resides in Collinston, Louisiana.

48.     On or about August 6, 2019, Plaintiff Morgan purchased a new 2019 Kia Rio from Sparks Nissan Kia, an authorized Kia dealer located in Monroe, Louisiana.

49.     Plaintiff Morgan purchased her 2019 Kia Rio vehicle primarily for personal, family, or household use.

50.     The safety and reliability of the vehicle were important factors in the Morgan's decision to purchase her vehicle. Before making her purchase, she reviewed the Kia brochure for the Rio as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. Plaintiff Morgan believed that the Kia Rio would be a safe and reliable vehicle.

51.     Kia's misstatements and omissions were material to Plaintiff Morgan. Had Kia disclosed its knowledge of the Defect before Morgan purchased her Rio, Morgan would have seen and been aware of the disclosures. Furthermore, had she known of the Defect, Morgan would not have purchased her vehicle or would have paid less for it.

52.     Plaintiff Morgan properly maintained her 2019 Kia Rio, in particular, making sure oil changes and routine service were timely.

53.     On January 12, 2020, Plaintiff Morgan drove from her home to the Loch Arbor Baptist Church in Monroe, Louisiana.  She pulled into the parking lot, turned off the engine, and was gathering her belongings when she thought she smelled smoke. Bystanders in the parking lot then warned her that her

1    vehicle was on fire.

2        54.     Plaintiff Morgan managed to get out of her vehicle safely and the

3    pastor of her church used a fire extinguisher to put out the fire and extinguished

4    the flames which had engulfed the engine.  When the fire department arrived,

5    they verified that the fire had been put out.

6        55.     There was no indication from the vehicle via warning lights or

7    sounds that there was a problem with the vehicle's engine.



23        56.     Due to the extent of the damage caused by the fire and foam, the

24    vehicle was classified as a total loss.

25        57.     At all times, Plaintiff Morgan, like all Class Members, has

26    attempted to drive her vehicle in a foreseeable manner and in the manner in

27    which it was intended to be used.

28

CLASS ACTION COMPLAINT

**Plaintiffs Christina and Seth Martin**

58.     Plaintiffs Christina and Seth Martin ("the Martins") are Missouri citizens who reside in Independence, Missouri.

59.     On or around August 22, 2016, the Martins purchased a new 2016 Kia Soul from Bob Sight Independence Kia, an authorized Kia dealer in Independence, Missouri.

60.     The Martins purchased their Kia Soul vehicle primarily for personal, family, or household use.

61.     The safety and reliability of the vehicle were important factors in the Martins' decision to purchase their vehicle. Before making their purchase, they reviewed the Kia brochure for the Soul as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. The Martins believed that the Kia Soul would be a safe and reliable vehicle.

62.     Kia's misstatements and omissions were material to the Martins. Had Kia disclosed its knowledge of the Defect before the Martins purchased their Soul, they would have seen and been aware of the disclosures. Furthermore, had they known of the Defect, the Martins would not have purchased their vehicle or would have paid less for it.

63.     The Martins properly maintained the 2016 Kia Soul, in particular, making sure oil changes and routine service were timely.  In addition, in 2018, the Martins received notice of a recall from Kia and promptly took their vehicle to the dealership, which performed a software update and informed them they were "good to go."

64.     In or around March 2018, while the vehicle was being driven, the check engine light illuminated and the car immediately stopped accelerating past 30 miles per hour.  The Martins took their vehicle to Bob Sight Kia for diagnosis and repair.  The catalytic converter was replaced.

65.     In or around January 2020, the Martins again experienced the check engine light illumination and the car being unable to accelerate past 30 miles per hour.  Once again, they took the vehicle to Bob Sight Kia for diagnosis and repair, and once more, the catalytic converter was replaced.

66.     On or around June 4, 2020, the check engine light in their vehicle illuminated again while being driven.  They took the vehicle to Bob Sight Kia for diagnosis and repair, where they were informed that the entire engine needed to be replaced.  The dealership kept their vehicle for approximately two weeks and installed a remanufactured engine.

67.     The day the Martins picked up their vehicle, the check engine illuminated and the vehicle was unable to accelerate the vehicle past 30 miles per hour.  They immediately returned the vehicle to the dealership.

68.     After about another week, the dealership informed the Martins that the fuel regulator in their vehicle needed to be cleaned and was not "on" correctly.  The dealership cleaned and fixed the fuel regulator.  After performing a 20 mile test drive, the dealership assured the Martins that their vehicle was repaired and had no problems.

69.     On or about July 2, 2020, the Martins went to Bob Sight Kia to pick up the vehicle.  On the way home from the dealership, Seth Martin was driving and Christina Martin was in the passenger seat.  They dropped off their son and were on their way home in a residential neighborhood, at East 35th Street and South Hardy Avenue, driving approximately 30 miles per hour, when a pedestrian began to wave his hands wildly to get their attention.  Christina Martin rolled down her window and the pedestrian yelled, "Fire!"  At that point, the Martins realized that their vehicle was on fire.

1
2
3
4
5
6
7
8

70.    Flames from the engine compartment quickly began to envelop the car while it was still moving.  Seth Martin turned the vehicle onto another street and tried to pull over, while Christina Martin tried to open her door to get out since the car was moving so slowly.  As the door opened, the flames shot up and she felt the heat on her arms and she was trapped.  Seth Martin managed to get his door open and grabbed her, and they both exited the vehicle from the driver's side.  This was captured on video by the surveillance camera on a local residence.



9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

71.    Immediately after managing to exit the vehicle, Martin heard a big "pop" and then three very loud "booms" as the car was engulfed in flames.

72.    The Independence Fire Department arrived on scene within minutes of fire.  When they arrived, the vehicle's engine compartment was "fully involved" in the fire.

1
2
3
4
5
6
7
8
9
10
11



12    73.    The incident report states that the "engine area, running gear" is the

13  area of fire origin.  The cause of the fire is undetermined after investigation.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2     74.    There was no indication from the vehicle via warning lights or

3  sounds that there was a problem with the vehicle's engine immediately prior to

4  the fire's start.

5     75.    Christina Martin contacted her vehicle's insurance company, who

6  refused to take her claim and informed her that she needed to speak with Kia

7  about the issue.

8     76.    The Martins had the vehicle towed to Bob Sight Kia, which did not

9  want the vehicle on its lot where consumers could view it.  It was removed to

10  Bob Sight Ford in Summit, Missouri.  The dealership also told the Martins to

11  contact Kia consumer affairs, which they did.

12     77.    At all times, Plaintiffs Christina and Seth Martin, like all Class

13  Members, have attempted to drive their vehicle in a foreseeable manner and in

14  the manner in which it was intended to be used.

15  **Plaintiff Dorothy Rice**

16     78.    Plaintiff Dorothy Rice is a citizen of Virginia and resides in

17  Madison Heights, Virginia.

18     79.    On or about August 23, 2019, Dorothy Rice purchased a new Kia

19  Rio sedan from Kia of Lynchburg, located at 3400 Old Forest Road, Lynchburg,

20  Virginia.

21     80.    Plaintiff Rice purchased her 2019 Kia Rio vehicle primarily for

22  personal, family, or household use.

23     81.    The safety and reliability of the vehicle were important factors in the

24  Rice's decision to purchase her vehicle. Before making her purchase, she

25  reviewed the Kia brochure for the Rio as well as the Monroney Sticker or

26  "window sticker" which listed official information about the vehicle. Plaintiff

27  Rice believed that the Kia Rio would be a safe and reliable vehicle.

28

82.     Kia's misstatements and omissions were material to Plaintiff Rice. Had Kia disclosed its knowledge of the Defect before Rice purchased her Rio, Rice would have seen and been aware of the disclosures. Furthermore, had she known of the Defect, Rice would not have purchased her vehicle or would have paid less for it.

83.     Plaintiff Rice properly maintained her 2019 Kia Rio, in particular, making sure oil changes and routine service were timely.

84.     On or about December 23, 2019, Plaintiff Rice's grandson, Tyrik Simmons, drove the vehicle from Culpepper, Virginia to the Charlottesville, Virginia, area.  While driving, he heard a ticking noise, pulled the vehicle over, and shut it off.  After waiting a moment, he restarted the vehicle and continued his drive on Route 29 South after the ticking sound did not reappear.

85.     The ticking sound returned as Mr. Simmons reached Lovington, Virginia, growing louder until he heard what sounded like an object falling from the vehicle onto the road.

86.     Almost immediately thereafter, Mr. Simmons observed flames emanating from below the vehicle.  He managed to pull over and get out of the vehicle without injury.

87.     The Amherst County Fire Department responded to the scene of the "fully involved" vehicle fire.  The fire department extinguished the fire with water, causing additional damage to the vehicle and its contents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18        88.   An oil slick left by the vehicle spread fifty yards along the left lane
19   of Route 29 South near the site of the fire, necessitating the application of
20   absorbent treatment to remove the excess oil.  The fire department also recovered
21   an engine part resembling the top of an engine piston from the oil slick.
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



The piston that fell out my brother car && caused it to catch on fire

20

21

22

23

24

25

26

27

28

89.     The Amherst County Public Safety Fire Marshall, Samuel A. Bryant, IV, stated in his incident report that the fire originated in the engine bay of the vehicle and was caused by a mechanical failure of the engine.  The most damaged portions of the vehicle were the engine compartment and the driver occupant area, including the driver's seat.

90.     The trunk area was damaged extensively by the heat of the fire, melting the Christmas presents inside, valued in excess of $2,500.

91.     There was no indication from the vehicle via warning lights or

1  sounds that there was a problem with the vehicle's engine.

2  92.  Due to the extent of the damage caused by the fire and water, the

3  vehicle was classified as a total loss.

4  93.  At all times, Plaintiff Rice, like all Class Members, has attempted to

5  drive her vehicle in a foreseeable manner and in the manner in which it was

6  intended to be used.

7  94.  Plaintiffs and each other Class member's ascertainable losses

8  include, but are not limited to, out-of-pocket losses by overpaying for the

9  vehicles at the time of purchase and repair costs, decreased performance of the

10  vehicles, loss of use of the vehicles, loss of items destroyed by the fires, and

11  diminished value of the vehicles. Accordingly, Plaintiffs bring claims

12  individually and as representatives of the Class.

13  **Defendant Hyundai Motor America, Inc.**

14  95.  Defendant Hyundai Motor America, Inc. is a corporation organized

15  and in existence under the laws of the State of California and registered to do

16  business in the State of California. HMA is headquartered in Fountain Valley,

17  California and is a wholly owned subsidiary of HMC.

18  96.  HMA is responsible for sales, marketing, service, distribution,

19  import and export of Hyundai branded products, including vehicles and parts, in

20  the United States. HMA is also the warrantor and distributor of Hyundai

21  vehicles, including the Class Vehicles, throughout the United States.  HMA is a

22  wholly owned subsidiary of HMC.

23  97.  In order to sell vehicles to the general public, HMA enters into

24  agreements with authorized dealerships who engage in retail sales with

25  consumers such as Plaintiffs.  In return for the exclusive right to sell new

26  Hyundai branded vehicles, authorized dealerships are also permitted to service

27  and repair these vehicles under the warranties HMA provides directly to

28

consumers who purchased new vehicles from the authorized dealerships.  All service and repair at an authorized dealership is completed according to Hyundai instructions, issued through service manuals, technical service bulletins ("TSBs") and other documents.  Per the agreements between HMA and the authorized dealers, consumers such Plaintiffs are able to receive services under HMA's issued warranty at dealer locations which are convenient to them.  These agreements provide HMA with a significant amount of control over the actions of the authorized dealerships.

98.    Upon information and belief, HMA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional material relating to the Hyundai Class Vehicles.

**Defendant Hyundai Motor Company**

99.    Defendant Hyundai Motor Company is a corporation founded in 1967 under the laws of South Korea and headquartered in Seoul, South Korea.

100.   HMC designs, engineers, manufactures, tests, markets, supplies, sells, and distributes Hyundai-branded vehicles and parts for those vehicles worldwide, including the United States.

101.   HMC is the parent corporation of HMA, as well as the United States based Hyundai facilities, including manufacturing in Alabama and the technical campus in Michigan.  For all its United States subsidiaries, including HMA, HMC provides all the technical information for the purposes of manufacturing, servicing, and repairing the Class Vehicles

102.   Upon information and belief, the relationship between HMA and HMC is governed by an agreement that gives HMC the right to control nearly every aspect of HMA's operations—including sales, marketing, management policies, technical information, servicing instructions, governance policies, pricing, and warranty terms.

**Defendant Kia Motors America, Inc.**

103.   Defendant Kia Motors America, Inc. is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. KMA is headquartered in Irvine, California and is a wholly owned subsidiary of KMC.

104.   KMA is responsible for sales, marketing, service, distribution, import and export of Kia branded products, including vehicles and parts, in the United States. KMA is also the warrantor and distributor of Kia vehicles, including the Class Vehicles, throughout the United States.

105.   In order to sell vehicles to the general public, KMA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiffs.  In return for the exclusive right to sell new Kia branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties KMA provides directly to consumers who purchased new vehicles from the authorized dealerships.  All service and repair at an authorized dealership is completed according to Kia instructions, issued through service manuals, TSBs and other documents.  Per the agreements between KMA and the authorized dealers, consumers such Plaintiffs are able to receive services under KMA's issued warranty at dealer locations which are convenient to them.  These agreements provide KMA with a significant amount of control over the actions of the authorized dealerships.

106.   Upon information and belief, KMA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional material relating to the Kia Class Vehicles.

**Defendant Kia Motor Company**

107.   Defendant Kia Motor Company is a corporation founded in 1944 under the laws of South Korea and headquartered in Seoul, South Korea.

1
2
3

108.   KMC designs, engineers, manufactures, tests, markets, supplies, sells, and distributes Kia-branded vehicles and parts for those vehicles worldwide, including the United States.

4
5
6
7

109.   KMC is the parent corporation of KMA, as well as the United States based Kia facilities, including manufacturing in Georgia.  For all its United States subsidiaries, including KMA, KMC provides all the technical information for the purposes of manufacturing, servicing, and repairing the Class Vehicles.

8
9
10
11
12

110.   Upon information and belief, the relationship between KMA and KMC is governed by an agreement that gives KMC the right to control nearly every aspect of KMA's operations—including sales, marketing, management policies, technical information, servicing instructions, governance policies, pricing, and warranty terms.

13
14
15

111.   Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles, including the Class Vehicles, nationwide and in Florida, Missouri, and Virginia.

16
17
18

112.   Defendants HMC and KMC worked together to develop, design, manufacture, test, and draft technical materials for the Class Vehicles and the Gamma engines.

19
20
21
22

113.   Defendants worked together on the drafting and distribution of all advertising materials and technical bulletins regarding the Class Vehicles to authorized dealers, as well as in training Hyundai and Kia-dealer technicians in the correct procedures to maintain, service, and repair Hyundai and Kia vehicles.

23
24
25
26

114.   At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California and throughout the United States of America.

27
28

**JURISDICTION**

115. This is a class action.

116. Members of the proposed Class number more than 100 and at least one plaintiff and one defendant are citizens of different states.  On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

117. Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

118. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

119. Defendants, through their businesses of marketing, distributing, selling, and leasing the Class Vehicles, have established sufficient contacts in this district such that personal jurisdiction is appropriate. Hyundai and Kia are deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

120. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because this is a judicial district in which the defendants reside and in which a substantial part of the events or omissions giving rise to the claims occurred.

**FACTUAL ALLEGATIONS**

121. Hyundai and Kia manufactured and sold defective engines and then failed to disclose the Defect for years, concealing the true nature of the engines and vehicles from consumers, who—unbeknownst to them—were driving vehicles that had serious safety-related defects because they could stall at any moment and/or burst into flames.

122. HMC and KMC designed and manufactured the Class Vehicles, and HMA and KMA imported, distributed, marketed, warranted, and/or sold the Class Vehicles in the United States.  HMA and KMA also provide service and

maintenance for the Class Vehicles through its extensive network of authorized dealers and service providers nationwide, using information provided by HMC and KMC.  Defendants have sold, directly or indirectly, though dealers and other retail outlets, millions of Class Vehicles in Florida, Missouri, Virginia, and nationwide in total.  In 2019, Hyundai had $23.2 billion in worldwide sales revenue.[4]  In 2019, Kia had $13.4 billion in worldwide sales revenue, approximately 35% of which is attributable to North American sales.[5]

123.   Kia and Hyundai developed the Gamma engine as an updated version of their own "Alpha" engine.  The Gamma engine was designed to specifically produce more power on less fuel, so that Kia and Hyundai would be able to meet government fuel efficiency standards.



124.   Like all GDI engines, the Gamma engines in Class Vehicles are subject to significantly higher pressure while in operation.  The pressure in the

---

[4] *See* Hyundai Motor Announces 2019 Fourth-Quarter Business Results (Jan. 22, 2020, available at https://www.hyundai.com/worldwide/en/company/news/news-room/news/hyundai-motor-announces-2019-fourth-quarter-business-results-0000016391

[5] *See* Kia Motors 2019 Business Results dated January 22, 2020 (available at https://pr.kia.com/en/company/ir/ir-library/business-results.do)

GDI design is increased in the Gamma engines due to their relatively smaller size compared to other 4-cylinder GDI engines.  Moreover, because the GDI design requires the fuel valve to spray atomized fuel directly into the combustion chamber, the software of the engine control module ("ECU") must be carefully designed and calibrated.

125.   As a result, the manufacturing, assembly, and quality control processes for producing and installing these engines must be both precise and robust, to minimize if not eliminate the possibility of impurities contaminating the production of the engine components and manufacturing errors from occurring.

126.   A few years after the Gamma engine was first introduced, both Hyundai and Kia had to scale up operations to meet increasing demands for their products.[6]

127.   However, upon information and belief, as Hyundai and Kia production and sales ramped up, the quality of the workmanship in manufacturing the engines, including but not limited to their components such as the engine blocks, pistons, and bearings, to design specifications and in programming the control modules suffered.

128.   Many of these issues would have been discoverable in quality control inspections of components and engine manufacture.  Such inspections are routine, to ensure that manufactured pieces meet design specifications.  Failure to meet these specifications leads to components which fail to fit together properly, breakdown, and are prone to damage themselves and other engine components, and cause the Defect.

129.   Upon information and belief, Gamma GDI engines in Hyundai and

---

[6] *See, e.g.*, https://www.industryweek.com/leadership/companies-executives/article/21937083/kia-motor-to-build-first-us-plant-in-georgia; https://www.autocar.co.uk/car-news/industry/hyundai-and-kia-ramp-car-build.

Kia branded vehicles are subject to the Defect and its associated safety risk, namely the excessive oil consumption, stalling, premature engine failures, and engine fires which result when driving.

130.   In fact, over 3,000 reports of fires in Hyundai and Kia-branded vehicles prompted NHTSA to open a formal investigation into the over 3 million Hyundai and Kia vehicles, many of which carried the Gamma GDI engine.[7]

131.   Because the Defect is the result of widespread quality and production problems, Hyundai and Kia are unwilling and/or unable to invest the time and money to upgrade their production lines and fix the Defect in the millions of vehicles.

132.   Instead, Defendants have engaged in a series of piecemeal recalls and service campaigns to distribute largely ineffective fixes which fail to fully repair the Defect.

**Defendants' Knowledge of the Defect**

133.   Plaintiffs are informed and believe, and based thereon allege, that before Plaintiffs purchased their Class Vehicles, and since at least 2009 if not substantially earlier, Defendants knew about the Defect through sources not available to consumers, including the following: pre-release testing data; pre-release quality control data; pre-sale quality control audits; post-sale audits of quality; early consumer complaints about the Defect to Defendants' dealers who are their agents for vehicle repairs; warranty claims data related to the Defect; aggregate data from Hyundai and Kia dealers; consumer complaints to NHTSA and resulting notice from NHTSA; early consumer complaints on websites and internet forums; dealership repair orders; testing conducted in response to owner and lessee complaints; and other internal sources of aggregate information about the problem.

[7] https://www.caranddriver.com/news/a27053460/nhtsa-investigation-hyundai-kia-fires/

134.   Further, even prior to bringing the Class Vehicles to market, Defendants were cognizant of the difficulty of manufacturing the quantity of Gamma engines needed to meet demand with the quality needed per the engine's GDI design, including but not limited to properly machining components and correctly calibrating the engine control unit which controls the fuel injection into the combustion chamber.

135.   In fact, Defendants have been sued previously for personal injuries suffered by owners and their passengers of vehicles with Gamma engines.  *See, e.g.*, *Ayala v. Kia Motor Corporation*, No. 3:19-cv-01150 (D. P.R.) (child died as a result of a fire in a 2016 Kia Rio); "Lawsuit filed rented Kia Soul caught fire on the H-3, severely burning driver," *Hawaii News Now* (August 13, 2019) (driver suffered third-degree burns as a result of a fire in 2019 Kia Soul).

136.   Complaints that Class Vehicles' owners and lessees filed with NHTSA demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendants' awareness of the problems with the AEB systems and how potentially dangerous the defect is for consumers. Attached hereto as **Exhibit A** is just a sampling of scores safety-related complaints that describe the Defect in Class Vehicles (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Complaints* (July 8, 2020), http://www- odi.nhtsa.dot.gov/complaints/).

137.   Also, complaints posted by consumers in internet forums demonstrate that the Defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Defendants' awareness of the problems with the Gamma engine and how potentially dangerous the Defect is for consumers. These complaints are listed on **Exhibit B** attached hereto.

138.   In fact, both Hyundai and Kia have instituted service campaigns and/or recalled some of the vehicles due to problems with the Gamma GDI

engine.

139.   In November 2012, Kia issued a TSB directing its dealers to inspect the 2013 Kia Rio for defective timing chains and guides, which could damage the engine.  The TSB called for dealers to replace the engine sub assembly and long block, rather than just the timing chains and guides.

140.   In February 2019, Hyundai and Kia recalled nearly 379,000 2012 to 2016 Kia Souls with the Gamma GDI engine.  This recall directed dealers to inspect the catalytic converters in the vehicles and replace, if the components was found to be damaged. In some instances, Hyundai and Kia acknowledged the damage could be severe enough that the entire engine would have to be replaced.  The catalytic converters were damaged by the high exhaust gas temperatures, causing abnormal combustion and damaging the engine's pistons and connecting rods.  A failed connecting rod can perforate the engine block, causing oil leaks and subsequent fires.  However, upon information and belief, the vast majority of recalled vehicles only received a software update, and not a replacement of the catalytic converter or the engine.

141.   In March 2019, Hyundai recalled about 20,000 2013 Hyundai Veloster with the Gamma GDI engine, for a software problem which causes the fuel to prematurely ignite in the cylinders near the pistons, and not in the combustion chamber.  This added additional pressure, damaged the engine, and caused the vehicles to stall, seize, and catch fire.

142.   Both of these recalls are attempts by Defendants to mitigate its damages, both in costs and in brand reputation, by only recalling some of the Class Vehicles.  However, even those vehicles subject to these recalls retain the Defect, and the recall repairs are insufficient to permanently fix the Defect, as can be seen by the fire in Plaintiff Martin's 2016 Kia Soul.

143.   Many Class Members report that Hyundai and Kia are reluctant to

honor the warranties provided with the vehicles after they report excessive oil consumption, engine failure, and/or fires.  Instead, Hyundai and Kia blame Class Members for failing to maintain their vehicles, even when provided maintenance records which show that routine service has been provided according the published maintenance schedules.  Often, Hyundai and Kia cite the fact that a Class Member sought an oil change from another provider as the reason they will not honor the warranty, despite the fact that the warranty does not require that all maintenance be performed at authorized dealers.

144.   Even some members of the Class whose vehicles have been recalled have found Hyundai and Kia are refusing to replace damaged engines, as described by one complaint to NHTSA below.

NHTSA ID Number:      11279888
Incident Date:        October 15, 2019
Report Date:          November 13, 2019
Location:             Clermont, FL
VIN:                  KNDJT2A57D7****
Vehicle:              2013 Kia Soul

I TOOK MY VEHICLE TO KIA FOR TWO RECALLS AND A PERFORMANCE ISSUE WITH THE ENGINE; SPECIFICALLY A LOSS OF POWER AND INCREASED OIL CONUMPTION. KIA PERFORMANCE AN ECU UPGRADE AND REPLACED THE CATALYTIC CONVERTER RELATED TO RECALL# SC176. THE RECALL ALSO IDENTIFIES INTERNAL ENGINE DAMAGE TO THE PISTONS THAT RESULT FROM OVERHEATING CAUSED BY HIGH CATALYTIC CONVERTER TEMPERATURES WHICH WAS ADDRESSED BY THE ECU UPGRADE. I INQUIRED ABOUT COVERAGE FOR THE DAMAGE TO THE ENGINE; HOWEVER I WAS TOLD THAT THE ENGINE DAMAGE WOULD NOT BE

COVERED BY KIA. AN OIL CONSUMPTION TEST WAS
PERFORMED AND KIA DOCUMENTED THAT 1 QUART OF OIL
HAD BEEN CONSUMED IN THE 1,000 ELAPSED MILES (WHICH
EXCEEDS THE MANUFACTURER[]S SPECIFICATION FOR
NORMAL RATE OF CONSUMPTION), I WAS TOLD THAT THE
ENGINE WOULD NEED TO BE REPLACED, AND KIA WOULD NOT
COVER THE COST. I WAS VERY SURPRISED AS THE ISSUES
THAT I AM HAVING WITH THE CAR ARE EXACTLY THE VERY
SAME ISSUES DESCRIBED IN THE RECALL.

145.   Defendants had knowledge that their misrepresentations and
omissions regarding the safety and performance of the Class Vehicles were
misleading, yet they continued to make the same misrepresentations and
omissions regarding the quality of their vehicles, that they would honor their
warranties for manufacturing and/or workmanship defects, the existence of the
Defect and its associated safety risk to Plaintiffs and members of the proposed
Classes, despite the fact that Defendants knew that the Vehicles were defective
and posed a highly dangerous threat to public safety.

146.   Defendants' marketing and advertising practices are clearly meant
to mislead consumers as to the safety and reliability of the Class Vehicles, as
well as Hyundai and Kia's willingness to honor their express warranties.  As a
direct and proximate result of Defendant's conduct, Plaintiffs and the proposed
Classes have suffered, and continue to suffer, injury in fact, ascertainable losses,
including the loss of their vehicles, and lost money.  Defendants, despite having
knowledge that their representations and omissions are misleading to Plaintiffs
and the proposed Classes, continue to market and advertise the Class Vehicles in
a deceptive manner.

147.   Plaintiffs and the proposed Classes are at risk of suffering further

injury if the relief sought is not granted.

148.   The alleged Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

149.   The existence of the Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Hyundai or Kia vehicle that was equipped with a Gamma GDI engine.  Had Plaintiffs and other Class Members known that the Class Vehicles had the Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

150.   Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's engine will function in a manner that will not pose a safety hazard and is free from defects that can cause the vehicle to stall while being driven or cause a fire.  Plaintiffs and Class Members further reasonably expect that Defendants will not sell or lease vehicles with known safety defects, such as the Defect, will disclose any such defects to its consumers when it learns of them, and will attempt to remediate and repair such defects.  They did not expect Defendants to fail to disclose the Defect to them, to continually deny the extent of the defect, and to fail to honor their warranties as promised.

**California Contacts**

151.   Both HMA and KMA are corporations organized and in existence under the laws of the State of California and registered to do business in the State of California.

152.   Both HMA and KMA do substantial business in California, with a significant portion of the sales and leases made in California. In fact, the majority of their work in sales, marketing, distribution, import, export, and warranty of Hyundai and Kia branded products, including vehicles and parts, takes placed in California.

153.   California hosts a significant portion of Defendants' U.S. operations, including sales and service offices and financial service offices, among others.

154.   In addition, the conduct that forms the basis for each and every Class member's claims against Defendants emanated from the HMA and KMA headquarters in California, and is consistent with directives of Defendants' personnel in California.

155.   Defendant HMA and KMA's marketing and advertising personnel are located at their California headquarters, and the advertising and marketing schemes, as well as the Owner's Guides and Owner's Manuals describing the safety and performance of the Vehicles (which omitted to describe the Defect), were made and implemented from those California headquarters.

156.   Defendant HMA and KMA's California personnel implemented its deceptive advertising scheme and other materials and have refused to repair the Defect in Plaintiffs' Vehicles.

157.   Defendants' personnel responsible for communicating with dealers regarding known problems with the defective Vehicles are also located at the California headquarters, and the decision to not inform authorized dealers of the Defect was made and implemented from Defendant HMA and KMA's California headquarters.

158.   Defendants have significant contacts with the State of California, and the conduct at issue herein emanated from California.

159.   As a result of Defendants' conduct, Plaintiffs and members of the proposed Classes have suffered injury in fact and have otherwise suffered damages, and have been harmed and will continue to be harmed in the future, unless Defendants are held accountable through this litigation.

160.   Plaintiffs seek injunctive relief, actual damages, disgorgement of

1   profits, statutory damages, attorneys' fees, costs, and all other relief available to

2   the Classes, as defined herein.

3               **TOLLING OF THE STATUTE OF LIMIATIONS AND ESTOPPEL**

4       161.   Any applicable statute of limitations has been tolled by Defendants'

5   knowing and active concealment of the Defect and misrepresentations and

6   omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and

7   members of the Class were deceived regarding the Class Vehicles and could not

8   reasonably discover the Defect or Defendants' deception with respect to the

9   Defect.  Defendants and their agents continue to deny the existence and true extent

10  of the Defect, even when questioned by Plaintiffs and members of the Class.

11      162.   Plaintiffs and members of the Class did not discover and did not

12  know of any facts that would have caused a reasonable person to suspect that the

13  Defendants were concealing a defect and/or the Class Vehicles contained the

14  Defect and the associated safety risk. As alleged herein, the existence of the

15  Defect was material to Plaintiffs and members of the Class at all relevant times.

16  Within the time period of any applicable statutes of limitations, Plaintiffs and

17  members of the Class could not have discovered through the exercise of

18  reasonable diligence the existence of the Defect or that the Defendants were

19  concealing the Defect.

20      163.   At all times, Defendants are and were under a continuous duty to

21  disclose to Plaintiffs and members of the Class the true standard, quality and

22  grade of the Class Vehicles and to disclose the Defect and corresponding safety

23  risk due to their exclusive and superior knowledge of the existence and extent of

24  the Defect in Class Vehicles.

25      164.   Defendants knowingly, actively and affirmatively concealed the

26  facts alleged herein. Plaintiffs and members of the Class reasonably relied on

27  Defendants' knowing, active, and affirmative concealment.

28

165.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

166.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

167.   The Class and Sub-Classes are defined as:

> **Class**:  All individuals in the United States who purchased or leased Hyundai or Kia brand vehicles with a "Gamma" 1.6L engine.

- **California Sub-Class:** All members of the Class who purchased or leased their vehicles in the State of California.

- **CLRA Sub-Class:**  All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

- **Florida Sub-Class**:  All members of the Class who purchased or leased their vehicles in the State of Florida.

- **Louisiana Sub-Class:**  All members of the Class who purchased or leased their vehicles in the State of Louisiana.

- **Missouri Sub-Class**:  All members of the Class who purchased or leased their vehicles in the State of Missouri.

- **Virginia Sub-Class**:  All members of the Class who purchased or leased their vehicles in the State of Virginia.

168.   Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

169.   Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

170.   Typicality: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Defendants. The representative Plaintiffs, like all Class Members, has been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective component systems. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

171.   Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

| | | |
|---|---|---|
| 1 | (a) | Whether Class Vehicles suffer from the Defect; |
| 2 | (b) | Whether the defects constitute an unreasonable safety risk; |
| 3 | (c) | Whether Defendants have knowledge of the Defect and, if so, |
| 4 | | how long Defendants has known of the defect; |
| 5 | (d) | Whether the Defect constitutes a material fact; |
| 6 | (e) | Whether Defendants have a duty to disclose the Defect to |
| 7 | | Plaintiffs and Class Members; |
| 8 | (f) | Whether Plaintiff and the other Class Members are entitled to |
| 9 | | equitable relief, including a preliminary and/or permanent |
| 10 | | injunction; |
| 11 | (g) | Whether Defendants knew or reasonably should have known |
| 12 | | of the Defect before they sold and leased Class Vehicles to |
| 13 | | Class Members; |
| 14 | (h) | Whether Defendants should be declared financially |
| 15 | | responsible for notifying the Class Members of problems with |
| 16 | | the Class Vehicles and for the costs and expenses of repairing |
| 17 | | the Defect; |
| 18 | (i) | Whether Defendants are obligated to inform Class Members |
| 19 | | of their right to seek reimbursement for having paid to |
| 20 | | diagnose or repair the Defect; |
| 21 | (j) | Whether Defendants breached the implied warranty of |
| 22 | | merchantability pursuant to the Magnuson-Moss Warranty |
| 23 | | Act; |
| 24 | (k) | Whether Defendants breached their express warranties under |
| 25 | | UCC section 2301; |
| 26 | (l) | Whether Defendants violated the California Legal Remedies |
| 27 | | Act; |
| 28 | | |

CLASS ACTION COMPLAINT

1    (m)    Whether Defendants violated the Song-Beverly Consumer

2           Warranty Act;

3    (n)    Whether Defendants violated California's Unfair Competition

4           Law;

5    (o)    Whether Defendants violated the Florida Deceptive Trade

6           Practices Act;

7    (p)    Whether Defendants violated the Louisiana Products Liability

8           Act;

9    (q)    Whether the Class Vehicles suffer from rehibitory defects;

10   (r)    Whether Defendants violated the Missouri Merchandising

11          Act;

12   (s)    Whether Defendants violated the Virginia Consumer

13          Protection Act;

14   (t)    Whether Defendants were unjustly enriched by their actions;

15          and

16   (u)    Whether damages, restitution, equitable, injunctive,

17          compulsory or other relief are warranted.

18   172.   Adequate Representation: Plaintiffs will fairly and adequately

19   protect the interests of the Class Members. Plaintiffs have retained attorneys

20   experienced in the prosecution of class actions, including consumer and product

21   defect class actions, and they intend to prosecute this action vigorously.

22   173.   Predominance and Superiority: Plaintiffs and Class Members have

23   all suffered and will continue to suffer harm and damages as a result of

24   Defendants' unlawful and wrongful conduct. A class action is superior to other

25   available methods for the fair and efficient adjudication of the controversy.

26   Absent a class action, most Class Members would likely find the cost of

27   litigating their claims prohibitively high and would therefore have no effective

28

CLASS ACTION COMPLAINT

remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION
### Violation of California's Consumers Legal Remedies Act,
### California Civil Code § 1750, *et seq*.
### (on behalf of the Class against All Defendants)

174.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

175.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the CLRA Class, or in the alternative, Plaintiff Pelayo brings this cause of action on behalf of the California Sub-Class.

176.   Defendants are "persons" as defined by California Civil Code § 1761(c).

177.   Plaintiffs and CLRA Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

178.   By failing to disclose and concealing the defective nature of the Gamma engines from Plaintiffs and Class Members, Defendants violated California Civil Code § 1770(a). *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

179.   Defendants' unfair and deceptive acts or practices, including but not limited to denying the Defect exists, occurred repeatedly in Defendants' trade or business.  These deceptive acts or practices were capable of deceiving a

substantial potion of the purchasing public and did in fact deceive a substantial portion of the public.

180.   Defendants' unfair and deceptive acts or practices imposed a serious safety risk on the public, because the Defect makes millions of vehicles prone to sudden breakdowns, stalling, and spontaneous fires on public roads.

181.   Defendants knew that the Class Vehicles and the Gamma Engines suffered from inherent defects, were defectively manufactured and/or had workmanship defects, and were not suitable for intended use.

182.   As a result of their reliance on Defendants' omissions regarding the existence, extent and scope of the Defect, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that their Class Vehicles were totally destroyed, functionally destroyed when their engines failed before the expected useful life of the vehicle, required extremely expensive repairs and/or paid high maintenance costs due to the vehicles' excessive oil consumption.

183.   Defendants were under a duty to disclose the Defect and its associated safety risk and repair costs to Plaintiffs and members of the Class because:

        a.  Defendants were in a superior position to know the true state of the facts about the Defect and its associated safety risks and repair costs in the Class Vehicles' Gamma engines;

        b.  Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their engines had a dangerous safety defect until it manifested; and

        c.  Defendants knew that Plaintiffs and Class Members could not

have reasonably have been expected to learn of or discover the
Defect and its associated safety risk.

184.   In failing to disclose the defective nature of the Gamma engines,
Defendants knowingly and intentionally concealed material facts and breached
their duties not to do so.

185.   The facts about the Defect that the Defendants concealed from, or
failed to disclose to, Plaintiffs and Class Members are material in that in that a
reasonable consumer would have considered them important in deciding whether
to purchased or lease the Class Vehicles or to pay less.  Had they known that the
Class Vehicles' engines were defective, Plaintiffs and Class Members would not
have purchased or leased the Class Vehicles or would have paid less for them.

186.   Plaintiffs and Class Members are reasonable consumers who do not
expect the engines installed in their vehicles to exhibit problems such as:
excessive oil consumption, stalling, premature failure, or to spontaneously burst
in flames and produce fast-moving fires which destroy the vehicle and endanger
the lives of the vehicle's occupants.  These are reasonable and objective
consumer expectations relating to vehicle engines.

187.   As a result of Defendants' conduct, Plaintiff and Class Members
were harmed and suffered actual damages in that, on information and belief, the
Class Vehicles experienced and may continue to experience problems such as:
excessive oil consumption, stalling, premature failure, or to spontaneously burst
in flames and produce fast-moving fires which destroy the vehicle and endanger
the lives of the vehicle's occupants.

188.   As a direct and proximate result of Defendants' unfair or deceptive
acts or practices, Plaintiffs and Class Members suffered and will continue to
suffer actual damages.

189.   Plaintiffs and the Class are entitled to equitable relief.

CLASS ACTION COMPLAINT

190.   Plaintiffs provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on August 7, 2020. If within 30 days, Defendants fail to provide appropriate for their violations of the CLRA, Plaintiffs will seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief they current seek.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of the Class, or in the alternative, on behalf the Sub-Classes against Defendants HMA and KMA)**

191.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

192.   Plaintiffs Sara Pelayo, Miles and Olivia McGregor, Christina Martin, and Dorothy Rice bring this claim on behalf of themselves and the Class, or in the alternative, Plaintiff Pelayo brings this claim on behalf of the California Sub-Class, Plaintiff Miles and Olivia McGregor bring this claim on behalf of the Florida Sub-Class, Plaintiff Martin brings this claim on behalf of the Missouri Sub-Class, and Plaintiff Rice brings this claim on behalf of the Virginia Sub-Class.

193.   As a result of Defendants HMA and KMA's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and members of the Class were harmed and suffered actual damages in that their vehicles and their possessions inside of those vehicles were completely lost to engine fires.

194.   Defendants HMA and KMA provided all purchasers and lessees of Hyundai and Kia-branded Class Vehicles with the express warranty described herein, which became a material part of the bargain.

195.   Defendants HMC and KMC manufactured and/or installed the engine and its component parts in the Class Vehicles, and the engine and its

1   component parts are covered by the express  warranty provided by Defendants

2   HMA and KMA.

3        196.   HMA and KMA provided all purchasers and lessees of the Class

4   Vehicles with a New Vehicle Basic Limited Warranty, lasting 5 years or 60,000,

5   whichever comes first, and a Powertrain Limited Warranty, lasting 10 years or

6   100,000 miles, whichever comes first.

7        197.   HMA and KMA breached the express warranty by performing

8   illusory repairs or insufficient repairs via their recalls. Rather than repairing the

9   vehicles pursuant to the express warranty, HMA and KMA falsely informed

10  Class Members that there was no problem with their vehicles and/or the stalls

11  and/or fires were caused by other issues, such as leaves or improper maintenance

12  even when provided with evidence to the contrary.  HMA and KMA's breaches

13  ensured that the Defect would continue to manifest, even outside of the Class

14  Vehicles' express warranty period, at which point HMA and KMA would deny

15  any responsibility for repairing the Defect.

16       198.   Plaintiffs and the members of the Class were not required to notify

17  HMA and KMA of their breach of express warranty and/or were excused from

18  doing so because affording HMA and KMA a reasonable opportunity to cure

19  their breach of written warranty would have been futile. Defendants was also on

20  notice of the Defect from its own pre-production testing, quality control audits,

21  the complaints and service requests it received from Class Members, from

22  repairs and/or replacements of the engine or a component thereof, and through

23  other internal sources.

24       199.   Further, Defendants HMA and KMA were notified of the Defect and

25  have been afforded a reasonable opportunity to cure their breach, including when

26  Plaintiffs and members of the Class called the customer service line to report

27  fires in their vehicles.  Defendant also received notice from Plaintiffs Miles and

28

Olivia McGregor and Christina Martin on or around July 20, 2020 via letter and from Plaintiff Pelayo on or about August 7, 2020.

200.   As a direct and proximate cause of Defendants' breach, Plaintiffs and members of the Class suffered, and continue to suffer, damages, including economic damages at the point of sale or lease.  Additionally, Plaintiffs and members of the Class either have incurred or will incur economic damages at the point of total loss of their vehicles.

201.   Plaintiffs and members of the Class are entitled to legal and equitable relief against Defendants HMA and KMA, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On behalf of the Class, or in the alternative, on behalf the Sub-Classes against All Defendants)

202.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

203.   Plaintiffs Sara Pelayo, Miles and Olivia McGregor, Christina Martin, and Dorothy Rice bring this claim on behalf of themselves and the Class, or in the alternative, Plaintiff Miles and Olivia McGregor bring this claim on behalf of the Florida Sub-Class, Plaintiff Martin brings this claim on behalf of the Missouri Sub-Class, and Plaintiff Rice brings this claim on behalf of the Virginia Sub-Class.

204.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

1   and their engines suffered from an inherent defect at the time of sale and

2   thereafter.

3          205.   Plaintiffs and the Class were not required to notify Defendants of

4   their breach of implied warranty and/or were excused from doing so because

5   affording Defendants a reasonable opportunity to cure their breach implied

6   warranty would have been futile. Defendants were also on notice of the Defect

7   from their own pre-production testing, quality control audits, complaints and

8   service requests it received from Class Members, from repairs and/or

9   replacements of the engine or a component thereof, and through other internal

10  sources.

11         206.   Defendants has been afforded a reasonable opportunity to cure its

12  breach, including when Plaintiffs presented their vehicles for recalls and service

13  at authorized dealerships, and when Plaintiffs contacted customer service lines to

14  report engine stalls or fires in their vehicles.

15         207.   In addition, on or about July 20, 2020, Plaintiffs Miles and Olivia

16  McGregor and Plaintiff Martin gave notice to Defendant that she intended to

17  pursue her warranty claims on behalf of a class of similarly situated consumers.

18  On or about August 7, 2020, Plaintiff Pelayo also gave such notice.

19         208.   Because Plaintiffs purchased their vehicles from authorized dealers,

20  they in privity with Defendants since (1) an agency relationship establishes

21  privity for purposes of the breach of implied warranty claims and (2) privity is

22  not required where plaintiffs are intended third-party beneficiaries of a

23  defendant's implied warranties.  Furthermore, under Missouri and Virginia law,

24  no privity is required between the parties to assert a breach for implied warranty

25  of merchantability.

26         209.   As a result of Defendants' breach of the applicable implied

27  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

28

loss of money, property, and/or value of their Class Vehicles.

210.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## FOURTH CAUSE OF ACTION
### Fraud by Omission and/or Fraudulent Concealment
### (On behalf of the Class, or in the alternative, on behalf the Sub-Classes against All Defendants)

211.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

212.   Plaintiffs Sara Pelayo, Miles and Olivia McGregor, Christina Martin, and Dorothy Rice bring this claim on behalf of themselves and the Class, or in the alternative, Plaintiff Pelayo brings this claim on behalf of the California Sub-Class, Plaintiff Miles and Olivia McGregor bring this claim on behalf of the Florida Sub-Class, Plaintiff Martin brings this claim on behalf of the Missouri Sub-Class, and Plaintiff Rice brings this claim on behalf of the Virginia Sub-Class.

213.   Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles, the presence of the Defect installed in the Class Vehicles, and the risk to the safety, functionality, and reliability of the Class Vehicles due to the Defect.

214.   Defendants' intentional and knowing concealment, suppression and/or omission of these material facts was done with the intent that Plaintiffs members of the Class would rely on Defendants' omissions.

215.   As a direct result of Defendants' fraudulent conduct, Class Members have suffered actual damages.

216.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Defect, but Defendants concealed the Defect and

never intended to repair or replace the Defect during the warranty periods.  What recalls and repairs that have been provided have failed to fully and permanently repair the Defect, in part because Defendants refuse to acknowledge the extent of the Defect.  To date, Defendants have not provided Plaintiffs and members of the Class with a repair or remedy that will eliminate the Defect.

217.   Defendants owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiffs and members of the Class because Defendants possessed superior and exclusive knowledge regarding the Defect.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the Defect so that Defendant could sell additional Class Vehicles and avoid the cost of repair or replacement.

218.   Additionally, once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

219.   The Defect exposes drivers and occupants to an unreliable vehicle with a dangerous safety defect. Plaintiffs and members of the Class had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.  No reasonable consumer expects a vehicle to be manufactured and assembled with an engine that, like the engine in the Class Vehicles, causes the vehicle to stall or have an engine fire.

220.   Plaintiffs and members of the Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have paid less for the Class Vehicles.

221.   Defendants knew their concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Defect would enable it to sell more Class Vehicles and would discourage Plaintiffs and members of the Class from seeking replacement or repair of the Defect.  Further, Defendants intended to induce Plaintiffs and members of the Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Defect, in order to decrease costs and increase profits.

222.   Defendants acted with malice, oppression and fraud.

223.   Plaintiffs and members of the Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Defect and associated safety hazard, Plaintiffs and members of the Class have suffered actual damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of the Class, or in the alternative, on behalf the Sub-Classes against All Defendants)**

224.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

225.   Plaintiffs Sara Pelayo, Miles and Olivia McGregor, Christina Martin, and Dorothy Rice bring this claim on behalf of themselves and the Class, or in the alternative, Plaintiff Pelayo brings this claim on behalf of the California Sub-Class, Plaintiff Miles and Olivia McGregor bring this claim on behalf of the Florida Sub-Class, Plaintiff Martin brings this claim on behalf of the Missouri Sub-Class, and Plaintiff Rice brings this claim on behalf of the Virginia Sub-Class.

226.   Plaintiffs and Class Members conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Defect and associated safety risks.

227.   Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Defect in the Class Vehicles.  As detailed above, in 2019, Hyundai had $23.2 billion in worldwide sales revenue and Kia had $13.4 billion in worldwide sales revenue.

228.   As a proximate result of Defendants' omissions and concealment of the Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and Class Members.

229.   Plaintiffs and Class Members are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct.

230.   Plaintiffs and Class Members seek an order requiring Defendants to disgorge their gains and profits to Plaintiffs and Class Members, together with interest, in a manner to be determined by the Court

**SIXTH CAUSE OF ACTION**
**Breach of Warranty Pursuant to Song-Beverly Consumer Warranty Act,**
**California Civil Code § 1791, *et seq*.**
**(On behalf of the California Sub-Class against All Defendants)**

231.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

232.   Plaintiff Sara Pelayo brings this count on behalf of herself and the California Sub-Class.

233.   Plaintiff Pelayo and the California Sub-Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

234.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

235.   Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

236.   Defendants impliedly warranted to Plaintiffs and the California Sub-Class members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.  Despite this, the Class Vehicles do not have the minimum quality that a buyer would reasonable expect.

237.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

   a. Pass without objection in the trade under the contract description.

   b. Are fit for the ordinary purposes for which such goods are used.

   c. Are adequately contained, packaged, and labeled.

   d. Conform to the promises or affirmations of fact made on the container or label.

238.   Plaintiff Pelayo and members of the California Sub-Class purchased or leased the Class Vehicles, manufactured by HMC and KMC, from HMA and KMA by and through their authorized agents for retail sales, and were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

239.   Defendants HMA and KMA provided Plaintiff Pelayo and members

CLASS ACTION COMPLAINT

of the California Sub-Class with one or more express warranties.  For illustrative purposes, HMA and KMA provide all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty, lasting 5 years or 60,000, whichever comes first, and a Powertrain Limited Warranty, lasting 10 years or 100,000 miles, whichever comes first.  Under warranties provided to members of the California Sub-Class, HMA and KMA promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Defect, at no costs to owners and lessees of the Class Vehicles. As alleged herein, HMA and KMA breached these warranties.

240.   Plaintiff Pelayo and members of the California Sub-Class experienced the Defect within the warranty periods but Defendants failed to inform Plaintiff Pelayo and members of the California Sub-Class of the existence of the Defect and associated safety hazard, and failed to provide a suitable repair or replacement of the defective engine and/or any damaged powertrain components free of charge within a reasonable time.

241.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

242.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and fit for the ordinary purpose for which vehicles are used.

243.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and not fit for the ordinary purposes of providing safe and reliable transportation. The Class Vehicles contain an inherent defect – the Defect related to the Gamma engines – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of

1  merchantability.  Defendants cannot disclaim its implied warranty as it
2  knowingly sold or leased a defective product.

3      244.   Defendants were provided notice of the Defect by internal testing,
4  quality control audits, numerous consumer complaints made to authorized
5  dealers nationwide, dealer audit reports, complaints to NHTSA, and through
6  other internal sources.  Affording Defendants a reasonable opportunity to cure
7  their breach of warranties would be unnecessary and futile here because
8  Defendants have known of and concealed the Defect and, on information and
9  belief, have refused to repair and replace Gamma engines and/or destroyed
10  vehicles free of charge within a reasonable time.

11      245.   Defendants breached their express and/or implied warranties in
12  violation of Cal. Civ. Code § 1791 *et seq*.

13      246.   As a direct and proximate result of Defendants' breach of their
14  express and/or implied warranties, Plaintiff Pelayo and members of the
15  California Sub-Class have been damaged in an amount to be proven at trial.

16      247.   Plaintiff Pelayo and members of the California Sub-Class have been
17  excused from performance of any warranty obligations as a result of Defendants'
18  conduct described herein.

19      248.   Plaintiff Pelayo and members of the California Sub-Class seek
20  actual damages, costs, attorneys' fees, and statutory damages as a result of
21  Defendants' willful conduct alleged herein.  Plaintiff Pelayo and members of the
22  California Sub-Class also seek reimbursement, replacement of the defective
23  Gamma engines and/or powertrain components damaged by the Defect, and/or
24  revocation of the purchase or lease of the Class Vehicles, and all other relief
25  available under Cal. Civ. Code § 1794.

26      249.   The applicable statute of limitations for the implied warranty claim
27  has been tolled by the discovery rule and/or fraudulent concealment.

**SEVENTH CAUSE OF ACTION**

28

**Violation of Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq*.**
**(On behalf of the California Sub-Class against All Defendants)**

250. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

251. Plaintiff Sara Pelayo brings this count on behalf of herself and the California Sub-Class.

252. The California Business & Professions Code § 17200 *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

253. As alleged herein, Defendants have violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

254. In violation of the UCL, Defendants employed unfair, unlawful and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Defect and corresponding safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Pelayo and members of the California Sub-Class.

255. Defendants actively suppressed the fact of the Defect's existence in Class Vehicles and that it present a dangerous safety hazard because of materials, workmanship, and/or manufacturing defects. Further, Defendants employed unfair, unlawful and fraudulent business practices to deny repair or replacement of the defective Gamma engine in Class Vehicles within a reasonable time in violation of the UCL.

256. Defendants breached the CLRA and the Song-Beverly Consumer Warranty Act as alleged herein in violation of the UCL.

257. Defendants' unfair, unlawful and fraudulent business practices were

CLASS ACTION COMPLAINT

likely to and did deceive reasonable consumers. Plaintiff Pelayo and members of the California Sub-Class have no reasonable way to know that Class Vehicles contained the Defect and the Class Vehicles were defective in materials, workmanship, and/or manufacture and posed a corresponding safety risk. Defendants possessed superior knowing as the quality and characteristics of the Class Vehicles and the Gamma engines, including the Defect and its associated safety risk, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as did Plaintiff Pelayo and members of the California Sub-Class.

258.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Defect in the Class Vehicles and its associated safety hazard with the intent to mislead Plaintiff Pelayo and members of the California Sub-Class.  Defendants knew or should have known that the Class Vehicles possessed the Defect and expose consumers to a corresponding safety hazard.

259.   Defendants owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiff Pelayo and the members of the California Sub-Class because Defendants possessed superior knowledge.  Defendants also owed a duty to disclose the Defect because Defendants made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiffs and members of the California Sub-Class. Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of the Class Vehicle because they consistently marketed the Class Vehicles as safe, functional, reliable, and as back by the longer warranty in the business.

260.   Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose the omitted facts, because where one does speak one must speak the whole truth

and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the Defect, Defendants engaged in unfair, unlawful and fraudulent business practices in order to sell additional Class Vehicles and avoid the costs of repair or replacement of the defective Gamma engines and/or damage powertrain components.

261.   Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiff Pelayo and members of the California Sub-Class.

262.   At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defect and its corresponding safety hazard were material to Plaintiff Pelayo and members of the California Sub-Class.  When Plaintiff Pelayo and members of the California Sub-Class purchased or leased their Class Vehicles, they reasonably relied upon the reasonable expectation that the Class Vehicles would be free from defects that pose an unavoidable, highly dangerous safety hazard. Had Defendants disclosed that the Class Vehicles contained the Defect and/or pose an unavoidable, highly dangerous safety hazard, Plaintiff Pelayo and members of the California Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

263.   Defendants had a continuous duty to Plaintiff Pelayo and members of the California Sub-Class to refrain from unfair, unlawful and fraudulent practices under the UCL and to disclose the Defect and associated safety hazard. Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect and corresponding safety hazard are substantially injurious to consumers.  As a result

of Defendants' knowing, intentional concealment and/or omissions of the Defect and associated safety hazard in violation of the UCL, Plaintiff Pelayo and members of the California Sub-Class have suffered damages to be determined at trial. Owners and lessees of Class Vehicles also suffered a ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the defective Gamma engines and/or Class Vehicles, loss of the benefit of the bargain and diminished value of their vehicles as a result of Defendants' unfair, unlawful and fraudulent acts and practices in the course of their business.

264.   Defendants have knowingly and willfully engaged in the unfair, unlawful and fraudulent business practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumer in order to maximize profits by selling additional Class Vehicles containing the undisclosed Defect and corresponding safety hazard.

265.   Defendants' unfair, unlawful and fraudulent acts and practices have harmed and continue to harm Plaintiff Pelayo and members of the California Sub-Class, have negatively affected the public interest, including the resources of numerous police and fire departments, and present a continuing safety hazard to Plaintiff Pelayo and members of the California Sub-Class and the general public.

266.   Plaintiff Pelayo and members of the California Sub-Class seek an order enjoining Defendants' unfair, unlawful, and fraudulent practices and award costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

**EIGHTH CAUSE OF ACTION**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §§ 501.201, *et seq*.**
**(on behalf of the Florida Sub-Class against All Defendants)**

267.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

268.   Plaintiffs Miles and Olivia McGregor bring this claim on behalf of themselves and the Florida Sub-Class.

269.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

270.   Defendants engaged in "trade or commerce" in Florida within the meaning of the FDUTPA. *See* Fla. Stat. § 501.203(8).

271.   In the course of their businesses, Defendants failed to disclose and actively concealed the Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

272.   In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Miles and Olivia McGregor and the Florida Sub-Class.

273.   Defendants actively suppressed the fact that the Class Vehicles contain a Defect and presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects. Further, Defendants

1    employed unfair and deceptive trade practices by failing to provide repairs of the

2    Defect or replacement of destroyed Class Vehicles due to the Defect within a

3    reasonable time in violation of the FDUTPA. Defendants also breached its

4    warranties as alleged above in violation of the FDUTPA.

5        274.   As alleged above, Defendants have known of the Defect contained

6    in the Class Vehicles for well over a decade. Prior to selling and leasing the

7    Class Vehicles, Defendants knew or should have known the Class Vehicles

8    contained the Defect due to pre-production testing, quality control audits, and

9    failure mode analysis. Defendants also should have known of the Defect from

10   the early complaints and service requests it received from Class Members and

11   dealers, from its own investigation and issuance of service bulletins and recalls,

12   from repairs and/or replacements of engine components, and from other internal

13   sources. Defendants, nevertheless, failed to disclose and actively concealed the

14   dangers and risks posed by the Class Vehicles and the Defect.

15       275.   By failing to disclose and by actively concealing the Defect in the

16   Class Vehicles, by marketing them as safe, reliable, and of high quality, and by

17   presenting themselves as a reputable manufacturer or distributor for a reputable

18   manufacture that values safety, Defendants engaged in unfair or deceptive

19   business practices in violation of the FDUTPA. Defendants deliberately withheld

20   the information about the propensity of the Defect to cause stalling and engine

21   fires. Further, Defendants knew, or should have known, that such incidents could

22   cause the Class Vehicles to severely injure vehicle operators, passengers and

23   other motorists and for the vehicles to become involved in collisions or other

24   accidents.  Defendants deliberately concealed and failed to disclose this material

25   information to ensure that consumers would purchase the Class Vehicles.

26       276.   In the course of Defendants' businesses, they willfully failed to

27   disclose and actively concealed the dangerous risks posed by the Defect.

28

1   Defendants compounded the deception by repeatedly asserting that the Class

2   Vehicles were safe, reliable, and of high quality despite containing the Defect,

3   and by claiming to be a reputable manufacturer or a reputable distributor for a

4   reputable manufacturer that values safety.

5       277.   Defendants' unfair and deceptive trade practices were likely

6   intended to deceive a reasonable consumer. Miles and Olivia McGregor and

7   members of the Florida Sub-Class had no reasonable way to know that the Class

8   Vehicles contained the Defect, which were defective in workmanship and/or

9   manufacture and posed a serious and significant safety risk. Defendants

10  possessed superior knowledge as to the quality and characteristics of the Class

11  Vehicles, including the Defect within their vehicles and its associated safety

12  risks, and any reasonable consumer would have relied on Defendants'

13  misrepresentations and omissions, as Plaintiffs Miles and Olivia McGregor and

14  members of the Florida Sub-Class did.

15      278.   Defendants intentionally and knowingly misrepresented material

16  facts and omitted material facts regarding the Class Vehicles and the Defect

17  present in Class Vehicles with an intent to mislead Miles and Olivia McGregor

18  and the Florida Sub-Class.

19      279.   Defendants knew or should have known that its conduct violated the

20  FDUTPA.

21      280.   Defendants made material statements and/or omissions about the

22  safety and reliability of the Class Vehicles and/or the defective engines installed

23  in them that were either false or misleading. Defendants' misrepresentations,

24  omissions, statements, and commentary have included selling and marketing

25  Class Vehicles as safe and reliable, despite their knowledge of the Defect and its

26  corresponding safety hazard.

27      281.   To protect their profits, avoid remediation costs and public relation

28

problems, and increase their profits by having consumers pay for component parts and expensive repairs to remedy the Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and existing Defect at the time of sale or lease. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

282.   Defendants owed Miles and Olivia McGregor and the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Defect because Defendants:

a.  Possessed exclusive knowledge of the Defect and its associated safety hazard;

b.  Intentionally concealed the foregoing from Miles and Olivia McGregor and the Florida Sub-Class; and/or

c.  Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Miles and Olivia McGregor and the Florida Sub-Class that contradicted these representations, inter alia, that a Defect existing at the time of sale or lease causes the Vehicles to stall or have an engine fire.

283.   Because Defendants fraudulently concealed the Defect in the Class Vehicles, and now that the Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Miles and Olivia McGregor and the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

284.   Defendants' failure to disclose and active concealment of the Defect in the Class Vehicles were material to Miles and Olivia McGregor and the

Florida Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports on and remedies them.

285. Caton and the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Miles and Olivia McGregor and the Florida Sub-Class members been aware of the Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Caton and the Florida Sub-Class either would not have paid as much for their vehicles or would not have purchased or leased them at all. Miles and Olivia McGregor and the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

286. Miles and Olivia McGregor and the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of the FDUTPA, and these violations present a continuing risk to Caton, the Florida Class, and the public in general. Defendants' unlawful acts and practices complained of above affect the public interest.

287. As a direct and proximate result of Defendants' violations of the FDUTPA, Miles and Olivia McGregor and the Florida Sub-Class have suffered injury-in-fact and/or actual damage, including the complete loss of their vehicles and the possessions inside of them.

288. Miles and Olivia McGregor and the Florida Sub-Class are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat § 501.2105(1).

289. Miles and Olivia McGregor and the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices,

declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**NINTH CAUSE OF ACTION**
**Breach of Warranty against Redhibitory Defects,**
**La. Civ. Code Ann. Art. 2520, 2524**
**(On behalf of the Louisiana Sub-Class against All Defendants)**

290.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

291.   Plaintiff Sandra Morgan brings this claim on behalf of herself and members of the Louisiana Sub-Class.

292.   Defendants are and were at all times relevant "sellers" with respect to motor vehicles under La. Civ. Code Ann. art. 2520, 2524.

293.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to La. Civ. Code Ann. art 2520, 2524.

294.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable conditions and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent Defect in their engines at the time of sale or lease and thereafter and present an undisclosed safety risk to drivers, passengers, and other motorists. Thus, Defendants breached the implied warranty of merchantability.

295.   At the time the members of the Louisiana Sub-Class acquired their Class Vehicles, those vehicles had a rehibitory defect within the meaning of La. Civ. Code Ann. art. 2520, in that (a) the Class Vehicles were rendered so inconvenient that members of the Louisiana Sub-Class either would not have purchased the Class Vehicles had they known of the Defect, or (b) because the Defect so diminished the usefulness and/or value of the Class Vehicles such that it must be presumed that Class members would have purchased the Class Vehicles, but for a lesser price.

296.   Defendants were provided notice of the Defect by internal failure mode testing, quality control audits, numerous consumer complaint to authorized dealers nationwide, complaints to NHTSA and through other internal sources, including but not limited to their own customer service hotlines.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Defect and, on information and belief, have refused to repair or replacement the defective Gamma engines and/or Class Vehicles free of charge within a reasonable time.

297.   Defendants were further provided notice by Plaintiff Morgan of their breach of warranties by letter dated August 7, 2020.  Despite this notice, Defendants did not fully cure the breach of warranties and failed to provide a suitable repair or replacement of her destroyed Class Vehicle free of charge within a reasonable time.

298.   Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

299.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Morgan and members of the Louisiana Sub-Class have been damaged in amount to be proven at trial.

300.   Plaintiff Morgan and members of the Louisiana Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

301.   The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of the Defect causes excessive oil consumption, stalling, premature failure, or spontaneous

1  engine fires. Defendants are estopped by their conduct, as alleged herein, from
2  disclaiming any and all implied warranties with respect to the defective Gamma
3  engines in Class Vehicles.

4      302.   The Defect in the Class Vehicles renders their use so inconvenient
5  that Plaintiff Morgan and members of the Louisiana Sub-Class would not have
6  purchased or leased the Class Vehicle had they known of the Defect.
7  Accordingly, Plaintiff Morgan and the Louisiana Sub-Class are entitled to obtain
8  a recession of the sale of their Class Vehicles.

9      303.   Alternatively, the Defect diminishes the usefulness of the Class
10  Vehicles or their value so that Plaintiff Morgan and members of the Louisiana
11  Sub-Class would still have bought their Class Vehicles but for a lesser price.
12  Accordingly, Plaintiff Morgan and the Louisiana Sub-Class are entitled to obtain
13  a reduction of the price.

14      304.   The applicable period of prescription for the implied warranty claim
15  has been tolled by the discovery rule and Defendants' fraudulent concealment of
16  the Defect, as well as the terms of the express warranty.

17      305.   Pursuant to La. Civ. Code Ann. arts. 2531 and 2545, Plaintiff
18  Morgan and the Louisiana Sub-Class seek to recover the purchase price with
19  interest from the time it was price; or else the difference in value of the defective
20  Class Vehicles at the time of sale compared to their value warranted by
21  Defendants; reasonable expenses occasioned by the sales; reasonable attorneys'
22  fees; and any other just and proper relief available.

**TENTH CAUSE OF ACTION**
**Violation of the Louisiana Product Liability Act,**
**La. Stat. Ann. 9:2800.51, *et seq.***
**(On behalf of the Louisiana Sub-Class against All Defendants)**

26      306.   Plaintiffs incorporate by reference the allegations contained in
27  paragraphs 1 to 165 of this Complaint.

28      307.   Plaintiff Sandra Morgan brings this claim on behalf of herself and

Page 66
CLASS ACTION COMPLAINT

1    the Louisiana Sub-Class.

2        308.   Defendants are "manufacturers" within the meaning of La. Stat.

3    Ann. 9:2800.53(1).

4        309.   Plaintiff Morgan and the Louisiana Sub-Class are "claimants"

5    within the meaning of La. Stat. Ann. 9:2800.53(4).

6        310.   Defendants placed the Class Vehicles into trade or commerce, which

7    are "products" within the meaning of La. Stat. Ann. 9:2800.53(3).

8        311.   The LPLA makes manufacturers liable for the damages caused by

9    their products which are "unreasonably dangerous" like one of four ways: 1) in

10   construction or composition; 2) design; 3) inadequate warning; and 3)

11   nonconformity to express warranty. La. Stat. Ann. 9:2800.55-58.

12       312.   Defendants manufactured, sold and distributed the Class Vehicles,

13   including the Gamma engines and their defects, which render the Class Vehicles

14   unreasonably dangerous with an associated safety risk which can lead Class

15   Vehicles to lose power, stall, or have an engine fire while driving, putting

16   vehicle operators, passengers, and other motorists at risk for injury.  Plaintiff

17   Morgan and the Louisiana Sub-Class used the Class Vehicles in a reasonably

18   foreseeable manner by using the vehicles to transport themselves and others.

19       313.   The Gamma engines installed within the Class Vehicles are

20   unreasonably dangerous in construction or composition because of the sudden

21   loss of power, stalling, and engine fires does not meet performance standards for

22   engines in any vehicle and deviates in a material from the manufacturer's

23   specifications.  Furthermore, the Defect and its associated safety risk put drivers,

24   passengers, and other motorists at risk for injury due to collisions and/or fires in

25   the vehicle.  The performance standards for engines do not include the risk that

26   they will consume excessive oil, stall or have fires while being driven and

27   Defendants' specifications for the Class Vehicles do not include such a risk.

28

314.   The Class Vehicles are unreasonably dangerous due to the Defect and Defendants' failure to disclosure the Defect, its existence, and associated safety risk to Plaintiff Morgan and the Louisiana Sub-Class. At the time Plaintiff Morgan and the Louisiana Sub-Class purchased their Class Vehicles, Defendants knew, or should have known, that the Defect in the Class Vehicles could cause the engine to consume excessive oil, stall, lose power, and experience fires while being driven.  Further, Defendants knew, or should have known, that this associated safety risk would cause the Class Vehicles to become involved in accidents and/or be engulfed in flames, putting drivers, passengers, and other motorists at risk for injury.  However, Defendants provided no warnings or otherwise conveyed these risks to Plaintiff Morgan and the Louisiana Sub-Class.

315.   The Class Vehicles are also unreasonably dangerous because the existence of the Defect and its associated safety risk, and Defendants failure to disclose either violates the express warranty Defendants provided that the Class Vehicles were safe, reliable, and functional vehicles capable of providing transportation, and that Defendants' industry-best warranty would correct any known defects in the Class Vehicles' manufacture, materials and/or workmanship.  Such warranties induced Plaintiff Morgan and members of the Louisiana Sub-Class to purchase the Class Vehicles.  These representations were untrue at the time of the purchase and/or lease of the Class Vehicles because Defendants knew that the Class Vehicles contained the Defect and associated safety risk.  Defendants' failure to provide Class Vehicles that conformed with their representations lead to the injuries sustained by Plaintiff Morgan and the Louisiana Sub-Class.

316.   Defendants knowingly concealed, suppressed and/or omitted the existence of the Defect and its associated safety risk in the Class Vehicles at the time of their sale or lease and at all relevant times thereafter.  Defendants failed

to inform Plaintiff Morgan and the members of the Louisiana Sub-Class of the Defect in their Class Vehicles at the time of purchase or lease and all times thereafter and Plaintiff Morgan and the members of the Louisiana Sub-Class had no independent knowledge that the Class Vehicles incorporate the Defect.

317.   Had Defendants disclosed that the Class Vehicles had the Defect and associated safety risk, Plaintiff Morgan and the members of the Louisiana Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.

318.   As a proximate and direct result of Defendants' conduct as described herein, Plaintiff Morgan and members of the Louisiana Sub-Class have suffered and continue to suffer harm by the loss of their vehicles, the threat of sudden engine stalls and/or fires, and/or higher than expected maintenance costs based on Defendants' own estimates, actual costs and damages including costs of repair and expenses for obtaining alternative transportation, and other damages to be determined at trial. Plaintiff Morgan and members of the Louisiana Sub-Class have also suffered the ascertainable loss of the benefit of the bargain they reached at the time of purchase or lease, and diminished value of their Class Vehicles.

319.   The conduct of Defendants caused unavoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided injury due to no fault of their own and Defendants' concealment of the Defect) without any countervailing benefit to consumers.

320.   The applicable period of prescription of the LPLA has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

321.   Pursuant to La. Civ. Ann. art. 2315, Plaintiff Morgan and the Louisiana Sub-Class seek to recover compensatory damages for past and future

harms in an amount to be determined at trial; and any other just and proper relief available.

## ELEVENTH CAUSE OF ACTION
### Violation of the Missouri Merchandising Practices Act,
### Mo. Rev. Stat. § 407.010, *et seq*.
### (on behalf of the Missouri Sub-Class against all Defendants)

322.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

323.    Plaintiffs Christina and Seth Martin bring this claim on behalf of themselves and the Missouri Sub-Class.

324.    Plaintiffs Christina and Seth Martin, the members of the Missouri Sub-Class and Defendants are "persons" within the meaning of Mo. Rev. Stat. § 407.020.

325.    The Class Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

326.    Defendants were and are engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

327.    The Missouri Merchandising Practices Act ("Missouri MPA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

328.    In the course of Defendants' business, Defendants violated the Missouri MPA by failing to disclose and actively concealing that the Class Vehicles possessed the Defect and its associated safety risk, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as reputable manufacturers and distributors that value safety and stood behind their vehicles after they were sold.

329.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Missouri MPA: representing the Class Vehicles have characteristics or benefits they do not have; representing they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

330.   Defendants have known or should have known for years of the Defect in the Class Vehicles and failed to disclose and actively concealed the associated safety risks posed by the Class Vehicles. Defendants also knew they were manufacturing, selling, and distributing Class Vehicles that did not perform as advertised and jeopardized the safety of the vehicle's occupants but failed to disclose this information to Plaintiffs Christina and Seth Martin and members of the Missouri Sub-Class.

331.   By failing to disclose and by actively concealing the Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers and distributors that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Missouri MPA.  Defendants deliberately withheld the information about the propensity of the defective engine to stall or start a fire in order to ensure that consumers would purchase the Class Vehicles.

332.   In the course of Defendants' businesses, they willfully failed  to disclose and actively concealed the associated safety risk of the Defect as discussed above and otherwise engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of the material facts concerning the Class Vehicles' Defect and correspondingly safety risk with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class

1   Vehicles.

2       333.   Defendants fraudulently, intentionally, negligently and/or recklessly

3   misrepresented to Plaintiffs Christina and Seth Martin and members of the

4   Missouri Sub-Class that the Class Vehicles were capable of providing safe,

5   reliable transportation and that the engines within the vehicles were high quality,

6   functional, and safe.

7       334.   Defendants fraudulently, intentionally, negligently and/or recklessly

8   misrepresented to Plaintiffs Christina and Seth Martin and the members of the

9   Missouri Sub-Class the characteristics of the Class Vehicles' engines with

10  respect to manufacture, workmanship, durability, functionality, maintenance, and

11  safety.

12      335.   Defendants intended that Plaintiffs Christina and Seth Martin and

13  members of the Missouri Sub-Class would, in the course of their decisions to

14  expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably

15  rely upon misrepresentations, misleading characterizations and material

16  omissions concerning the quality of Class Vehicles engines with respect to

17  workmanship and/or manufacture.

18      336.   Information regarding the Defect as described herein is material to

19  consumers in that defects results in stalls and engine fires while driving, which

20  cause serious safety risks.  As alleged above, Defendants made material

21  statements and omissions about the safety and reliability of the Class Vehicles

22  that were either false or misleading.

23      337.   If Defendants had not concealed the Defect from Plaintiffs Christina

24  and Seth Martin and members of the Missouri Sub-Class within the express

25  warranty period, the Defect could have been repaired without cost to purchasers

26  as promised under the original warranty.

27      338.   To protect their profits and to avoid remediation costs and negative

28

press, Defendants concealed the dangers and risks posed by the Class Vehicles and the associated safety risk of the Defect, and allowed new and used car purchases to continue to buy and/or lease the Class Vehicles and allowed them to continue to drive the dangerous vehicles.

        a. Defendants owed Plaintiffs Christina and Seth Martin and members of the Missouri Sub-Class a duty to disclose the true quality, safety, functionality, and reliability of the Class Vehicle because Defendants:

        b. Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        c. Intentionally concealed the foregoing from Plaintiffs Christina and Seth Martin and the members of the Missouri Sub-Class that contradicted these representations.

339.   Defendants violated the Missouri MPA by failing to inform Class Vehicles owners prior to purchase and/or during the warranty period that Class Vehicle engines were defectively manufactured and/or suffered from workmanship defect that posed an associated safety risk.

340.   Defendants violated the Missouri MPA by failing to inform Class Vehicles owners prior to purchase and/or during the warranty period that Class Vehicles engines contained defendants and would require repair and/or replacement.

341.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs Christina and Seth Martin and members of the Missouri Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm.

342.   Plaintiffs Christina and Seth Martin and members of the Missouri Sub-Class experienced ascertainable losses caused by Defendants'

misrepresentations and their failure to disclose material information about the Defect and its associated safety risk in the form of engine stalls and fires, failure to receive the benefit of their bargains, diminution of Class Vehicle resale value, increased costs, and substantially property and monetary damages.

343.   Had they been aware of the existence and extent of the Defect in Class Vehicles, and Defendants' disregard for safety, Plaintiffs Christina and Seth Martin and the members of the Missouri Sub-Class would have either paid less for their Class Vehicles or would have purchased or leased them at all. Plaintiffs Christina and Seth Martin and the members of the Missouri Sub-Class had no way of discerning the Defendants' representations were false and misleading or otherwise learning the facts that Defendants had concealed or failed to disclose.

344.   As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiffs Christina and Seth Martin and the members of the Missouri Sub-Class have suffered injury-in-fact and/or actual damages.

345.   Defendants are liable to Plaintiffs Christina and Seth Martin and the Missouri Sub-Class for damages in amounts to be proven at trial, including attorneys' fees, costs, punitive damages, and any other just and proper relief available under Mo. Rev. Stat. § 407.025.

## TWELFTH CAUSE OF ACTION
### Violation of the Virginia Consumer Protection Act,
### Va. Code Ann. § 59.1-196, *et seq.*
### (On behalf of the Virginia Sub-Class against All Defendants)

346.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 to 165 of this Complaint.

347.   Plaintiff Dorothy Rice brings this claim on behalf of herself and the Virginia Sub-Class.

348.   Plaintiff Rice, the members of the Virginia Sub-Class, and Defendants are "persons" as defined by Va. Code Ann. § 59.1-198.

349.   The sale or lease of the Class Vehicles Plaintiff Rice and members of the Virginia Sub-Class were for personal, family or household purposes and are "consumer transaction[s]" as defined by Va. Code Ann. 59.1-198.

350.   The Class Vehicles are "goods" as defined by Va. Code Ann. § 59.1-198.

351.   Defendants are a "supplier" as defined by Va. Code Ann. § 59.1-198.

352.   Defendants violated the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-200(A), by *inter alia*: (1) "[m]isrepresenting that the Class Vehicles have certain quantities, characteristics, ingredients, uses, or benefits; (2) "[m]ispresenting that the goods or services are of a particular standard, quality, grade, style, or model;" (3) "[a]dverting goods or services with the intent not to sell them as advertised;" and (4) "[u]sing any other deceptive, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

353.   In the course of their businesses, Defendants willfully failed to disclose and actively concealed the Defect and otherwise engaged in activities with a tendency or capacity to deceive as discussed herein. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with intent that others reply upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

354.   In violation of the VCPA, Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Defect and corresponding safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Rice and the Virginia Sub-Class.

355.   Defendants actively suppressed the fact that the engine in Class Vehicles is defective and presents a safety hazard as described herein because of workmanship and/or manufacturing defects. Further, Defendants employed unfair and deceptive trade practices to deny repair or replacement of the defective engines within a reasonable time in violation of the VCPA. Defendants also breached their warranties as alleged herein in violation of the VCPA.

356.   Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Rice and the members of the Virginia Sub-Class had no reasonable way to know that Class Vehicles contained transmissions that were defective in workmanship and/or manufacture and posed a dangerous safety risk.  Defendants possessed superior knowledge as to the quality, characteristics, functionality, and safety of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as did Plaintiff Rice and the members of the Virginia Sub-Class.

357.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Defect and corresponding safety hazard with the intent to mislead Plaintiff Rice and the members of the Virginia Sub-Class.  Defendants knew, or should have known, that the engines in Class Vehicles had a defect that could manifest both within and without the periods of the manufacturer's warranties.  Defendants also knew, or should have known, that the Defect in the Class Vehicles could cause the vehicles to stall or have engine fires.  Further, Defendants knew or should have known that such issues would put vehicle operators, passengers and others at risk for injury and could cause the Class Vehicles to become involved in collisions or other accidents.

358.   Defendants owed a duty to disclose the Defect and its corresponding

safety hazard to Plaintiff Rice and members of the Virginia Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect. Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the Defect so that Defendants could sell additional Class Vehicles and avoid the cost of repair or replacement.

359.   Additionally, once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendant was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

360.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiff Rice and the members of the Virginia Sub-Class.

361.   At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentation and/or omissions regarding the Defect and its corresponding safety risks were material to Plaintiff Rice and the Virginia Sub-Class members.  When Plaintiff Rice and the members of the Virginia Sub-Class purchased or leased their Class Vehicles, they reasonable relied on the reasonable expectation that the Class Vehicles would be free from safety defects, pose an unavoidable safety hazard, and/or had engines that would not suddenly stall while in motion.  Plaintiff Rice and the members of the Virginia Sub-Class would have purchased or leased their Class Vehicles, or would have paid less for their vehicles, if they had been aware of the Defect and its corresponding safety risks.

362.   Defendants had a continuous duty to Plaintiff Rice and members of the Virginia Sub-Class to refrain from unfair and deceptive practices under the VCPA and to disclose the Defect and its corresponding safety hazards. Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect and corresponding safety hazards are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Defect and corresponding safety hazards in violation of the VCPA, Plaintiff Rice and the members of the Virginia Sub-Class have suffered harm and/or continue to suffer harm by the threat having vehicles which can stall or have an engine fire.  Owners and lessees of Class Vehicles also suffered an ascertainable loss of the benefits of the bargain they reached at the time of purchased or lease, and diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of its business.

363.   Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Defect and corresponding safety hazards.

364.   Defendants' deceptive acts or practices occurred in the conduct of trade or commerce.  Defendants knew or should have known that its unlawful conduct violated the VCPA.

365.   Defendants' unlawful acts and practices affect the public interest, and trade and commerce in the State of Virginia, and present a continuing safety hazard to Plaintiff Rice and members of the Virginia Sub-Class.

366.   As a direct and proximate result of Defendant's violations of the VCPA, Plaintiff Rice and members of the Virginia Sub-Class have suffered

CLASS ACTION COMPLAINT

actual damages and/or injury in fact, including, *inter alia*: (1) complete loss of use of vehicles destroyed by fires; (2) deprivation of the benefit of the bargain at the time of purchase or lease, including the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect; and/or (3) the diminished resale value of the Class Vehicles containing the Defect.

367.   Plaintiff Rice and the members of the Virginia Sub-Class seek actual damages against Defendants in an amount to be determined at trial and/or statutory damages pursuant to the VCPA based Defendant's wanton and willful conduct, costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the VCPA.  *See* Va. Code § 59.1-204.

## RELIEF REQUESTED

368.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

(a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as representative of the Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the system, including the need for repairs;

(c)   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from

selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform the warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial.

(e) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(f) An award of attorneys' fees and costs, as allowed by law;

(g) An award of pre-judgment and post-judgment interest, as provided by law;

(h) Leave to amend the Complaint to conform to the evidence produced at trial; and

(i) Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

369. Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs demand a trial by jury of all issues in this action so triable.

CLASS ACTION COMPLAINT

Dated:  August 13, 2020

Respectfully submitted,

By: /s/*Craig C. Marchiando*

**CONSUMER LITIGATION ASSOCIATES, P.C.**
Craig C. Marchiando (SBN 283829)
Matthew J. Erausquin (SBN 255217)
700 South Flower Street
Suite 1000
Los Angeles, CA 90017
Tel: 703-273-7770
Fax: 888-892-3512
craig@clalegal.com
matt@clalegal.com

Leonard A. Bennett (*Pro Hac Vice* to be filed)
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757-930-3660
Fax: 757-257-3450
lenbennett@clalegal.com

**BERGER MONTAGUE PC**
Russell D. Paul (*Pro Hac Vice* to be filed*)*
Abigail J. Gertner (*Pro Hac Vice* to be filed)
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
rpaul@bm.net
agertner@bm.net

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT